ROBERT L. STEVENS ET AL., CONSTITUTING THE WATER BOARD OF BALTIMORE CITY ET AL.,

*vs.*

## FRANK E. CROSBIE.

*Municipal Employee—Removal.*

Acts of the head of a municipal department done upon a certain date, such as striking an employee from the pay roll, if done upon the assumption that the employee had previously been removed, did not constitute a removal of the employee on that date. p. 663

A statement by the head of a municipal department to an employee therein, made April 1st, that he had been removed March 30th, this being the first notice to him in regard to his removal, *held* not to show a removal on the earlier date. p. 664

*Decided January 21st, 1921.*

Appeal from the Baltimore City Court (GORTER, J.).

The cause was argued before BOYD, C. J., PATTISON, URNER, STOCKBRIDGE, ADKINS and OFFUTT, JJ.

*Edward F. Johnson,* Assistant City Solicitor, with whom was *Roland R. Marchant,* City Solicitor, on the brief, for the appellants.

*Arthur W. Machen, Jr.,* and *Raymond S. Williams,* with whom were *Hershey, Machen, Donaldson* and *Williams* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the court.

The appellee in this case was, on the 31st of March, 1920, a bookkeeper in the Water Department of the City of Baltimore, in which department he had served as an employee since September 1904.

On March 31st, 1920, William A. Megraw, president of the Water Board of the City, and known and designated as the Water Engineer, wrote to the appellee the following letter:

"March 31st, 1920.

"Mr. Frank E. Crosbie,
      "1136 Harford Ave.,
            "Baltimore, Md.

"Dear Sir:

"Because of certain changes necessary in the Water Department to adapt it to the requirements of the present city administration, it will be necessary to dispense with your services effective March *30*, 1920.

"Thanking you for your services to the department, I remain,

"Yours very truly,
                  "William A. Megraw,
                        "Water Engineer."

On the same day the Water Engineer wrote to F. L. Webb, paymaster of the department, the following letter, a copy of which he sent the City Comptroller:

"Effective March 31st, 1920, please place Mr. F. E. Crosbie on the per diem pay roll as clerk in the auditing division, as the City Service Commission has authorized the temporary retention of Mr. Crosbie for a period of four days, after which he will be dropped from the pay roll.

"Mr. Crosbie is now on the monthly pay roll at a salary of $1,500 per annum."

The letter to Crosbie was written after 5 o'clock on the evening of the 31st day of March, 1920, after he had left for his home and, if ever posted, it was never received by him.

On the 1st day of April, 1920, Crosbie went to his work as usual, and about ten o'clock of that day he was sent for by Mr. Megraw and was asked by him if he had received from him the above letter, and when told by Crosbie that he had not received it, Megraw stated that he was very sorry, but that he had put somebody else in his place the night before. Crosbie then told him that he was going to keep his place and take his case to the "Merit Board."

The "Merit Board" to which the appellee referred is what is known as the City Service Commission, which was created by the new City Charter of Baltimore City, Sec. 203A, and to which was given the power to investigate all matters touching the execution of the provisions of the subdivision of the Charter creating said Board and of the rules and regulations adopted by it in conformity therewith.

In said sub-division of the Charter (Sec. 203-O) it is provided that:

> "All persons holding positions in the city service when such positions are placed under the provisions of this subdivision of the Charter, shall be entitled to retain their position until discharged, reduced, promoted or transferred in accordance with the provisions of this subdivision of the Charter." And that, "No person shall be discharged from the classified city service or be reduced in pay or position or suspended by the appointing officer for or on account of his political or religious opinions or affiliations. * * * In all cases of discharge or reduction or suspension for more than thirty days, the appointing officer shall furnish the subordinate so discharged, reduced or suspended, and also the commission, a copy of the order of removal and also his reasons for same." (Sec. 203-L.)

It was because of the above-mentioned provisions that Crosbie insisted that the matter of his removal should be considered and passed upon by the Commission. Therefore, on the 5th day of April he wrote the City Service Commis-

sion in respect thereto and received from the Board the following letter in reply:

"The commission has had before it for some time the question raised in your letter of April 3, 1920.

"After careful consideration and thorough discussion, it has decided that the action of the department having been taken and made a matter of record prior to April 1, 1920, the commission has no jurisdiction to determine the validity of the action taken, and is thus forced to decline to make any ruling in the case."

In the meantime, on April 9th, the Water Engineer had written to the City Solicitor, Mr. Marchant, saying:

"Notices were sent to Mr. C. A. Whitmeyer, shop foreman, and Mr. F. E. Crosbie, bookkeeper, in the Water Department, terminating their services on March 31st, 1920. These men claim they failed to receive notification and appealed to the City Service Commission for an opinion as to whether or not they remain on the pay roll of the department after April 1st. The City Service Commission, after considering the matter, decided that these cases are not properly under their jurisdiction because the City Service Law was not effective prior to April 1st, 1920, and have requested me to refer the matter to the City Solicitor for an opinion.

"I am herewith enclosing copies of the letters written to Mr. Crosbie and Mr. Whitmeyer. It was rumored that city service would become effective ninety· days after January 1st, which would have made it in force at midnight of March 30th. For this reason the replacement of Crosbie and Whitmeyer was made retroactive, and in order to compensate them for work done on March 31st, they were placed on the weekly pay roll, with the permission of the City Service Commission, in temporary positions for an additional period of three days.

"Mr. Charles Bunting was designated to replace Mr. C. A. Whitmeyer and Mr. J. W. Wilson to replace

Mr. F. E. Crosbie. Both Whitmeyer and Crosbie are reporting for work as usual, pending a decision as to their status, but both have been notified that the Water Department does not recognize their services.

"Will you please render me an opinion as to who are the official occupants of these positions."

In reply to the above letter the City Solicitor wrote him on April 12th, saying:

"From the circumstances set forth in your letter of the 9th instant, and our telephone conversation with reference to the appointment of Charles Bunting and J. W. Wilson, it seems to me that these appointments are entirely regular and the appointees are properly on the pay roll of the city.

"Aside from the question of the validity of the above appointments, there can be no doubt that Messrs. Crosbie and Whitmeyer are no longer on the pay roll. You, as the head of the department, have the absolute right to discharge employees for the good of the service, and this, as I understand it, you have done in the case of Crosbie and Whitmeyer."

On the same day, April 12th, 1920, the Water Engineer wrote Crosbie, saying:

"The City Service Commission, after consideration of your request of an opinion as to whether or not you are legally on the pay roll of the Water Department since April 1st, has referred it back to me with instructions to request an opinion from the City Solicitor, because the matter was not under the jurisdiction of the City Service Commission, being of a date prior to April 1st.

"I am herewith enclosing a copy of the City Solicitor's opinion. The City Solicitor states that the head of a city department has the absolute right to discharge employees.

"In accordance with the City Solicitor's opinion, I am herewith notifying you that your services with the

city terminated upon the dates which the paymaster of the department is carrying on his pay roll.

"I take this opportunity to say that your services with the department were quite satisfactory, and I wish you success in whatever new work you will take up."

In reply thereto Crosbie wrote the Water Engineer the following letter:

"Yours of April 12th, with enclosed copy of letter from Mr. Marchant, received, and, replying to same, would say that I considered Mr. Marchant's opinion more of a personal than a legal advice.

"You state that 'this matter was not under the jurisdiction of the City Service Commission, being of a date prior to April 1st.' You are aware of the fact that even up to the present date I have received no formal notification of my dismissal, said letter having never left your office.

"I have been informed by a member of the City Service Commission that it seems that my dismissal is not consistent with the rules of the Commission and same will be settled in a few days, more than likely on Wednesday, April 14th. In the meantime, I have been advised to continue at my work as usual, which I shall do, as I consider myself still an employee of this department until the commission rules otherwise.

"Trusting you will understand the stand I am taknig in this matter, I am

"Yours very truly,

"(Signed) Frank E. Crosbie."

He thereafter continued his work at the Department until the 14th day of April, and on that day he signed the payroll accepting the four days' pay and his salary for the latter half of March, that being all that was allowed him, his name having been stricken from the payroll.

On April 20th, 1920, Crosbie filed his petition in the Baltimore City Court against Robert L. Stevens and others,

constituting the Water Board of Baltimore City; William A.
Megraw, Water Engineer; Richard Gwinn, City Register,
and Peter E. Tome, City Comptroller, in which was alleged
the facts we have stated, together with the further facts that
Crosbie was a duly registered qualified voter of the city, affili-
ated with the Democratic party, while the defendant Megraw,
and a majority of those constituting the Water Board, were
duly registered and qualified voters affiliated with the Re-
publican party, and appointees of Honorable William F.
Broening, Mayor of Baltimore City, likewise affiliated with
the last-named party, and charging that Megraw, against his
own convictions and better judgment and by force of par-
tisan pressure, attempted to discharge the petitioner from
the Water Department solely on account of his affiliation
with the Democratic party, and in order to give his position
as an employee of said Water Department to some person
affiliated with the Republican party.

The prayer of the petitioner prayed that a writ of man-
damus

> "issue to the defendant Water Board and the defend-
> ant Water Engineer, commanding them and all of
> them to restore the petitioner to his position as an
> employee of the Water Board of said city, and to
> recognize and treat your petitioner in all respects as
> an employee of said Water Board, and further com-
> manding the said defendant, Megraw, to restore peti-
> tioner's name to the pay roll of the Water Depart-
> ment, and further commanding the said Peter E.
> Tome, Comptroller, to make provision by warrant on
> the City Register, for the payment of salary due and
> to become due to your petitioner, and further command-
> ing the defendant, Richard Gwinn, City Register, to
> pay or authorize the payment of such salary to your
> petitioner."

The case was tried by the Court sitting as a jury, and at
the conclusion of the testimony the defendants offered two

prayers. The first asked the court to dismiss the mandamus because of a want of legally sufficient evidence under the pleading to entitle the petitioner to the writ asked for. This was refused, while their second was granted. It does not appear that the petitioner asked for instructions, but the Court granted an instruction of its own to the effect: "That if the court sitting as the jury finds from the evidence that the Water Engineer discharged or attempted to discharge the petitioner on account of his political affiliations, then the verdict should be for the petitioner."

The defendants excepted to the rulings of the Court in refusing their first prayer and in granting the prayer prepared by the court of its own motion.

The verdict of the Court was in favor of the petitioner and a writ of mandamus was granted as prayed. It is from that judgment of the court that this appeal was taken.

The court, in our opinion, was fully justified in refusing the first prayer of the defendants upon the facts alleged in the petition which, if not conceded, are fully proven by the evidence adduced in the case, with the possible exception of the alleged motive that influenced Megraw in attempting to remove Crosbie from the position held by him, and this we do not feel called upon to decide because of the view we take of this case.

If Crosbie was validly removed it was before April 1st, 1920, at a time when it is conceded the City Service Commission had no jurisdiction to determine its validity, and this was the view of the Commission, for on the 14th day of April, 1920, it passed an order, stating:

> "That the action of the department in these cases (there being another case of the same character) having been taken and made a matter of record prior to April 1, 1920, the commission has no jurisdiction to determine the validity of such action, and hence declines to rule on the question of whether such removals were properly made and legally effective."

The Water Engineer in his letter of March 31, 1920, to Crosbie stated that:

"It will be necessary to dispense with your services effective March 30, 1920."

And in his letter to the City Solicitor dated April 9, 1920, he said:

"I am herewith enclosing copies of the letters written to Mr. Crosbie and Mr. Whitmeyer. It was rumored that city service would become effective ninety days after January 1st, which would have made it in force at midnight of March 30th. For this reason, the replacement of Crosbie and Whitmeyer was made retroactive and in order to compensate them for work done on March 31st they were placed on the weekly pay roll."

It will thus be seen that the time when the removal of Crosbie was to become effective and his services were to be dispensed with was earlier than April 1st, 1920, the time when the "Merit System" became effective; and unless it can be shown that there was a valid removal of Crosbie, effective at the time mentioned, there was no valid removal of him at all, for all acts done after March 31st, 1920, such as striking him from the payroll, were done upon the assumption that he had been validly removed before that time. Such facts had relation only to the removal or attempted removal of Crosbie at the time when it is said his services were dispensed with on the 30th day of March, 1920; and in no way did they establish or constitute a removal of Crosbie at a time subsequent to the 31st day of March, 1920.

The question, therefore, for our consideration is, was there a valid removal of the petitioner prior to the said 1st of April, 1920?

It is indeed difficult to understand, upon the facts alleged in the petition and sustained by the evidence offered, how there could have been a removal of Crosbie on March 30th,

the time the Water Engineer stated the removal was to become effective, when, as testified to by Crosbie, he, the Water Engineer, told him on April 1st that had he (Crosbie), asked him on the morning of the 31st if his place was all right he would have told him "yes," and that "they had started on him some time after dinner for his position, and it was after 5 o'clock before he gave in to them."

This being true, there certainly could not have been a removal of the petitioner on the preceding day. There was nothing whatever said to Crosbie about his alleged removal until the 1st day of April, and then he was told that he had been removed two days before, when, as a matter of fact, he had been constantly at his work up to the very time he was sent for by the Water Engineer on April 1st and told by him that he was retroactively removed on the 30th day of March. This could not have been.

Before his removal could have been effective, upon the facts of this case, he should have had notice, not of an intention to remove him, but of his removal at or before the time it was to become effective. 22 *R. C. L.* 576; *Comm.* v. *Slifer,* 25 Pa. St. 23; *Jenkins* v. *Scranton,* 205 Pa. St. 598.

The court, we think, acted properly in refusing the defendant's first prayer, and we find no reversible error in the court's ruling in granting the prayer offered upon its own motion.

There was a demurrer to the petition, but this, we think, was properly overruled. We must, therefore, hold that there was no error in the court's action in directing the writ of mandamus to issue, and the judgment will be affirmed.

*Judgment affirmed, with costs.*